First case scheduled for oral argument this morning, Thursday, December 18, 2025, 25-1065, Southern Iowa, United States v. Sam Sando. Mr. Smith, the Court appreciates your willingness to accept the Criminal Justice Act appointment. I do it very gladly, Your Honor. May it please the Court, Counsel. The theme that I noticed as I was reading over my briefs and this case of preparing for their oral arguments is who gets to decide credibility in a jury trial? And I think that's really, if the Court answers that question, I think it decides the appeal. Does the jury get to decide the credibility of witnesses in a jury trial, or does the judge get to decide the credibility of witnesses in a jury trial? There's a couple of issues that I would like to speak to you about today. First is the deposition of Asado Abalo. The next is the statements that Detective Carter made while he was interviewing Alina Williams while he testified to a trial. And then if I get there, if I have the time for it, I'd like to speak about the statements that Alina Williams made at a previous trial that she heard about Andrew Meyer getting rid of a gun. Now, the deposition of Asado Abalo, I believe, is fully in the Court's record. But the Court reads it, even on a transcript, I have to admit it's not very credible. But it was important at this trial because hearsay statements were admitted of Asado Abalo saying that she saw Sam Sando with a gun with an Ithaca sticker. And hearsay statements were also admitted that he committed domestic abuse against her. Now, in those deposition statements, she says that he never committed domestic abuse against her, never told her how to testify, and that she never saw him with a gun. Now, that's important whether the government thinks it's best for us to put that in the case or not because the jury was going to be able to view her credibility. As an all or nothing, or as a some position, the jury could have viewed all of her testimony as credible through the hearsay statements and the inconsistent statements. They could have viewed some of her testimony as credible, or they could have viewed none of it as credible. But if that, I'm sorry, if that came in, the deposition, the district court was pretty clear that the government was going to be permitted to play the entire body cam video as well, correct? So, I mean, what we were trying to avoid at the time was any of the jail calls, but they already got in most of the body cam video. So at that point, yeah, we wanted it in. When you say most of the body cam video, I thought that the district court was fairly careful on which were excited utterances, which were present sense impressions, and what was admissible from Abalo. But that much of that was going to be excluded. And perhaps I'm wrong, but I thought there was some concern about the additional footage. There was, and the court did limit it somewhat. We never weighed the issue in the sense that we were fine with the entire body cam video coming in. I'm sorry, you said you were fine with it? Yeah, as long as we got to have the deposition of her denying it. Do you think, you have presented in your brief sort of a, with friends like the government who needs enemies or something. But I wondered if it in fact was something within the district court's discretion. In other words, not putting it on, regardless of what the government's view is on prejudice or not. Isn't that a factor that the district court could consider in its assessment of whether under 403, something could come in that it would be overly prejudicial for you to do that? I mean, I don't think that the district court needs to babysit defendants' cases. Isn't that 403 though? That does go into 403 evidence in general, but I don't really think that's what the district court was doing. And then also, I think that being careful about where the line being drawn needed to allow us to actually put it in statements that maybe this witness is incredible, maybe none of these things happened. This witness has said the exact opposite under sworn testimony before. Like, can we trust any of this? Well, I get that, but you're trying to get this in through 807 at this point, right? Yeah. Yeah, when you look at 807, it's gotta be the best evidence available. Well, why wasn't the best evidence available? Calling the witness, putting the witness on the stand, asking what happened. When she says what's going to happen, you say, well, did you make a prior inconsistent statement? Let me show it to you. Did you testify to this? I mean, it seems like all that can come in. Now, I know that the judge said, if you call her, I'm going to appoint a lawyer for her. And I'm going to tell her that she's at risk to be prosecuted for false statements. And she might take the Fifth Amendment, blah, blah, blah. But until you actually have that witness called, and they say, I'm going to assert my privilege against self-incrimination. Now you've got a different animal, because now you can make the argument that under Rule 807, this is the best available evidence that we have. And it does point to something. But I look at this, and I think, well, it just really never quite gets there. Because on your own statement, say, whatever she has to say, it's not very reliable, right? We don't know, because she's given so many different statements. And some of what she said is, in fact, controverted by the body cam footage, right? But it just seems to me that this was kind of offered originally, 803, 804, as some kind of an exception. Then we get to, well, it's not that it's catch-all, but I just don't know that it's really laid in that well. Well, 807 is one theory behind its admissibility. So the other theory is that these are inconsistent statements of a hearsay declarant, right? So I think that also comes in under that theory, that it's a hearsay declarant. We don't need to have her there or call her there to say, bring her up on there, under that theory. And like I said, it does go to how is this theory of this part of the government's case really going to work out? Because this was important in how they presented this case, that, okay, well, we saw the gun. And then he has a plan from that very night about the gun, rather than sticking entirely to just the next day of the robbery. And so it really kind of bolsters the government's case when we get them to point out that this hearsay declarant is not credible. Let's look at other questions on that issue, though. I was going to move on to the statements made by Detective Carter, who was the case agent on the case. Now, while Detective Carter was interviewing Alina Williams, he said that, you're lying to me, essentially. Actually, those were actually his words, you're lying to me, from when I saw the video and I offered that as proof at the trial. Now, what he testified to at trial was that she was minimizing. Now, the court, in not allowing us to get into his actual statement, which was that you are lying to me, said that, well, this is a technique, it's not inconsistent, all those things. All things that should go to the weight of the evidence, not its admissibility. Something that the jury should have been able to decide. Well, okay, well, we think that's a technique that law enforcement's able to use, and so we still think that Detective Carter's credible. But the jury also might have equally said, well, we think that's a pretty dirty, low-down technique, that officers can do that. And also, we don't really believe him now that he says that he's minimizing. We think that he actually said that he actually thought she was lying to him the first time, but is now going back and saying, well, she's minimizing as a way to keep his case altogether. The jury was absolutely free to reject that, and the judge should not have inserted herself into saying, well, I find this credible because this is a law enforcement technique. Juries get to say that we don't believe in law enforcement techniques, or that they make the law enforcement less credible. I reserve the rest of my time for rebuttals. Unless there are any questions right now, I'll reserve that time. Thank you. Thank you. Good morning. May it please the court, Kyle Hanson on behalf of the United States. Just to answer the defendant's overall theme that he presented this morning about the district court making credibility calls, pretty much every evidentiary issue that he's raised specifically requires the court to make calls on the reliability of the evidence. So the court did not abuse its discretion in doing so. So starting with Ms. Abalo's statements, the residual hearsay exception requires sufficient guarantees of trustworthiness. So it required the court to make those calls. What about 806? Yeah, so for 806, it's not a credibility call, but it is baked into the balancing that the court does. So the court recognized that based on the blatant unreliability of those statements she made during the deposition, it had very little probative value to impeaching the credibility of her excited utterances. And then weighed against it, the court had to consider the concerns, the dangers that Rule 403 addresses, which is not only prejudiced to the defendant's case that would have materialized here, but also issues about waste of time and confusing the issues. Did the district court make those express findings? Because it seemed like there was at one point where the district court just said, well, you're not getting that in because it's hearsay. Which suggests an 807 denial basis. But not an 806 analysis. And so I didn't really see any of the kind of analysis that you're describing here today. So it comes out more in the pre-trial conference where the court talks about creating a circus if all that subsequent evidence comes in. I agree that at trial, the court focused more on Rule 807 in that analysis. But it was incumbent on the defendant at that point if he had a separate theory of admissibility to ask the court to make express findings on that theory in order to preserve the error. Did the defendant assert 806 as a basis to get this in? In the pre-trial portions, yes. There's a motion that he filed and there's discussion of that at the pre-trial conference. But when it comes to the first day of trial and it's page, I think it's about page 11 of the trial transcript. The court focuses on the 807 question and doesn't address the 806 question. That's what I saw. I didn't see the pre-trial, but. So when we look at the 806 theory that the defendant's presenting is that it somehow undermines the reliability of her excited utterances. However, the excited utterances were strong, reliable evidence. The record showed that Ms. Abalo was in a very excited state. She was terrified. She was crying. She had visible injuries. There's damage visible around her apartment. And what she tells police is backed up by other evidence. So in particular, she shows a photo of the defendant holding the gun. Do you agree with the characterization that Mr. Sandoz lawyer has presented about what additional portions of the body cam footage were excluded and alternatively would have been included had the deposition come in? Yeah, so to be clear on that, the body cam did not come in at trial as it was. So none of the body camera came in, right? So it was just the testament. The 911 call came in. And then the court said that making the 404B and the intrinsic extrinsic evidence ruling said it's a much safer course to just offer the officer's testimony about her excited utterances rather than the video itself. However, if the defendant was allowed to offer the deposition as impeachment evidence, then as rehabilitative evidence, the government was going to be allowed to play the entirety of the body cam. And that would have included what the officer testified about, but also some additional statements that she made that the district court was trying to keep out as an initial matter. Correct. So the jury would have seen, instead of just hearing about her emotional state, would have actually seen her emotional state. And the jury also would have heard testimony about, or not testimony, but her statements about prior instance of domestic violence between the two that the court, in striking a fair balance, tried to keep from the jury. And on top of that, would have heard evidence of the 345 jail phone calls that the defendant made to Miss Abalo in violation of the no contact order. Which again, undermines the credibility of that subsequent deposition, where she switches her story. But there was one jail call that was offered. I'm not sure I would characterize it as a jail call. It was from the interrogation room. So right after, he's initially arrested on the domestic violence charge. And then he's questioned, and there's questions about his involvement in the robbery. And then, that's when he calls her and says, basically, you need to either not cooperate, or if they ask you, tell them I was with you, because that's the strongest evidence they have. And again, if the deposition were offered under 806, the only use the jury could have had for it was to impeach the excited utterances. But what the defendant really wanted the jury to hear is her denials of him ever having a gun, ever committing domestic violence against him. And that's a substantive offer, which would not be allowed under 806. So it's just another reason the district court could exercise its discretion under 403 to exclude it. Turning to the questions about Detective Carter's testimony, the defendant's questions were improper from the start. It's never proper for a party to ask a witness if another witness was telling the truth. This one's a little different, because I think he's just changed his story. And I understand that this is maybe a fine line, maybe require a jury instruction. But there's sort of vouching, or do I believe this witness baked into this? But there's also just a switch in what he said, sort of he's telling the jury something different than he said previously. So if you can kind of just see it as a inconsistent statement of sorts, why can't the jury kind of figure that out? Yeah, so the very first question the defendant asks is, did you say that Elena Williams was lying? So that's the question that was improper. And then he's trying to take that a step further and try to impeach the detective about that. And I think the district court reasonably recognized that his questioning technique was not a statement of his belief. But why isn't that just something that you can explain on redirect? I mean, it seems to me that if in fact somebody says, you're lying to me. That once there's a claim that there's been vouching for the witness, because the statement's been minimized. Well, all of a sudden, I think you've opened the door to all that. And I don't see why, I'm just having a hard time understanding really where the judge was here talking about, well, it's just a technique, blah, blah, blah. And I said, well, once the door's open, explain the technique. The jury's perfectly capable. I mean, are they surprised that police officers lie to suspects? I don't think so. They all watch TV, right? And so, I mean, I'm just having a hard time with the, and really, it's sort of the stark contrast that you're seeing here. That the government is being protected in a way that the defendant is not, right? And it seems to me it's not a very even-handed set of rulings that we're looking at here. So I would, first of all, disagree that it wasn't even-handed. I mean, there are rulings that the district court makes that are for the defendant's benefit. But apart from that, if you look at the true reason the defendant wanted Detective Carter's statements in, and this is from his brief, is that if Detective Carter had been impeached in the way he wanted, that would make Alina Williams' testimony less believable. And that is exactly the vouching purpose of offering that testimony. And it was improper, and the district court did not abuse its discretion by excluding it for that purpose. So for those reasons, the government asks that this court affirm the convictions. Thank you, Mr. Hanson. First, I want to address the 806 issue. I argued it. I argued it at the pre-trial. I argued it, but the court, I didn't really rule on it, I would agree. But I got my answer once the court told me that it wasn't coming in. I think the error was very well preserved there, and they put it being a little unrealistic to ask a judge during trial. Like, please, do some more factors. We had the answer. As far as Detective Carter goes, I did want the jury to know that Alina Williams had been lying to Detective Carter. But more importantly, he wasn't testifying on her credibility. If he said, yeah, I looked at her while she was testifying, looks good to me, you guys are all set. That would be testifying as to her credibility. Or if he said, yeah, people that are always in these drug deals, they always tell the truth later, badgering on her credibility. This was about whether she was lying to him during the course of his investigation. And she was. And then later on, he tried to change the story. So instead of her lying to him, he said, I was just minimizing. She's still a good witness. It's really him trying to vouch for her in the first place. And when I try and point out, well- What's the significant difference between minimizing and lying? Well, I think that if anyone was accused of lying, it would be much different than minimizing. I think minimizing is like, well, I went down here. I hung out last night. I had a little dinner. Lying would be like, no, no, I didn't have a bunch of ribs last night, right? One's trying to avoid the question, and one is directly saying false statements in regards to the question. So how I would say the difference between minimizing and lying is. I think that's my time, unless there's any questions. Then I'm sure you guys can keep me up here. But otherwise, thank you all. The court appreciates both counsel's appearance and argument today. The case is submitted.